**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHYKEETRA MALTBIA,** | * | |
| | * | |
| **Petitioner,** | * | |
| | * | **CRIMINAL NO. 19-00209-JB-B** |
| **vs.** | * | **CIVIL ACTION NO. 24-00188-JB-B** |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Respondent.** | * | |

**REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner Chykeetra Maltbia's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 244). This matter has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration,

[1] United States District Judge Jeffrey U. Beaverstock presided over the district court proceedings in this matter. The undersigned has reviewed Petitioner Maltbia's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Beaverstock.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

the undersigned hereby recommends that Petitioner Maltbia's § 2255 motion (Doc. 244) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Maltbia. The undersigned further recommends that in the event Petitioner Maltbia requests a certificate of appealability and seeks to appeal *in forma pauperis*, said requests be **DENIED**.

## I. BACKGROUND

Petitioner Chykeetra Maltbia ("Maltbia") is a former physician who operated a pain management clinic in Mobile, Alabama. After two of her patients were discovered to be selling their oxycodone thirty-milligram prescription pills to another individual, the United States Drug Enforcement Administration ("DEA") began an investigation into Maltbia's medical practice and executed a search warrant for her clinic in February 2019.

In August 2019, a federal grand jury in the Southern District of Alabama issued an indictment charging Maltbia with one count of conspiracy to unlawfully distribute and dispense a Schedule II controlled substance by means of a prescription, for no legitimate medical purpose and outside the usual course of professional practice, in violation of 21 U.S.C. §§ 846 and 841(a); and four counts of unlawfully distributing and dispensing a Schedule II controlled substance by means of a prescription, for no legitimate

medical purpose and outside the usual course of professional practice, in violation of 21 U.S.C. § 841(a)(1). (Doc. 1).

In February 2020, a grand jury returned a superseding indictment charging Maltbia with one count of conspiracy to unlawfully distribute and dispense Schedule II controlled substances by means of a prescription, for no legitimate medical purpose and outside the usual course of professional practice, in violation of 21 U.S.C. §§ 841(a) and 846 (count one); sixteen counts of unlawfully distributing and dispensing a Schedule II controlled substance by means of a prescription, for no legitimate medical purpose and outside the usual course of professional practice, in violation of 21 U.S.C. § 841(a)(1) (counts two through seventeen); and eighteen counts of healthcare fraud, in violation of 18 U.S.C. § 1347 (counts eighteen through thirty-five). (Doc. 49).[3]

In April 2020, attorneys Dennis Knizley and Gordon Armstrong appeared in the case as retained counsel for Maltbia. (Docs. 81, 82). In December 2020, the Government moved to dismiss all of the healthcare fraud claims against Maltbia, and the district court

[3] The superseding indictment named Leroy Ray Dotson, who was employed at Maltbia's clinic and was also Maltbia's stepfather, as an additional defendant in counts one, three, and eight through seventeen. (See Doc. 49). At the close of the evidence at the trial of Maltbia and Dotson in August 2021, the district court granted Dotson's oral motion for judgment of acquittal and dismissed all counts against Dotson. (Doc. 162).

granted the motion and dismissed counts eighteen through thirty-five of the superseding indictment. (Docs. 112, 114).

Maltbia proceeded to trial, which began on August 23, 2021. (Doc. 215). At trial, the Government called several witnesses, including six law enforcement agents or analysts; the state pharmacy director for the Alabama Department of Public Health; the engineering manager for the electronic medical records company used by Maltbia's clinic; and a medical expert. (See Docs. 215, 216, 217, 218).[4] Maltbia elected not to testify in her own defense

[4] The Eleventh Circuit Court of Appeals provided the following summary of the evidence presented by the Government at trial:

> Maltbia is a physician who owned and operated a medical clinic in Mobile, Alabama. At trial, a special agent with the United States Drug Enforcement Administration ("DEA") testified that he became familiar with Maltbia's clinic through an investigation into several individuals for selling "oxycodone 30" prescription pills. He discovered that the individuals selling oxycodone 30 were Maltbia's patients and observed them at Maltbia's clinic. After searching Maltbia's clinic and the electronic data stored on her computers pursuant to a search warrant, he learned that Maltbia regularly prescribed controlled substances to her patients—including oxycodone 30. Further investigation revealed that Maltbia had already signed prescriptions for patients that she was scheduled to see later in the day; that Maltbia charged her patients $300 per visit; that Maltbia's patients "mainly" paid in cash or by credit card; and that Maltbia had issued prescriptions to patients while she was out-of-state on multiple occasions. A DEA intelligence analyst testified that 58.7% of Maltbia's patients received at least one prescription of oxycodone 30. And the government's expert witness concluded that Maltbia prescribed opioids without properly assessing patients and that she falsified medical records.

but did call one medical expert witness of her own. (See Doc. 218). At the close of the Government's case, Maltbia made an oral motion for judgment of acquittal. (Doc. 159). The district court granted the motion as to count three but denied the motion as to the remaining counts. (Doc. 160). Maltbia made another oral motion for judgment of acquittal at the close of all the evidence, and the district court granted the motion as to the conspiracy charge in count one but denied the motion as to the remaining substantive counts. (Docs. 163, 164). On August 31, 2021, the jury found Maltbia guilty of the offenses charged in counts two and four through seventeen of the superseding indictment. (Doc. 165).

In November 2021, Maltbia filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. (Doc. 186). In the motion, Maltbia noted that "[o]n November 5, 2021, subsequent to the expiration of the fourteen (14) days for filing of a Motion for a New Trial pursuant to Rule 33, the United States Supreme Court has granted a petition for writ of certiorari in the cases of United States v. Xiulu Ruan, and a consolidated case, United States v. Shakeel Kahn." (Id. at 1). Maltbia stated that the "issues contained in the petition for writ [of] certiorari in each of these cases are directly applicable to the facts, trial,

---

(Doc. 228 at 3-4 (footnote omitted)).

indictment, and legal issues surrounding" her case. (Id.). Maltbia asserted that the Supreme Court's decision on the issues presented in the petitions for writ of certiorari in the Ruan and Kahn cases "could impact [her] conviction in the case and form the basis for a new trial." (Id. at 2). Maltbia asked the Court to accept her motion for a new trial to be filed out of time and to delay ruling on the motion for new trial and delay her sentencing until after the Supreme Court ruled on the issues raised in the Ruan and Kahn cases. (Id.). The district court denied Maltbia's motion for a new trial. (Doc. 205). In December 2021, the district court sentenced Maltbia to five years of probation and ordered her to pay a $50,000 fine. (Docs. 206, 230).[5]

Maltbia appealed her convictions to the Eleventh Circuit Court of Appeals. (Doc. 208). She was represented on direct appeal by Knizley. On appeal, Maltbia argued that (1) the district court's exclusion of "good patient care" evidence deprived her of the right to present a complete defense in violation of the Fifth and Sixth Amendments; (2) the district court erred by not instructing the jury that the Government was required to prove that she prescribed controlled substances without a legitimate

[5] In imposing a probationary sentence, the district court varied "significantly" below the guideline imprisonment range of "78 to 97 months" based on Maltbia's "history and characteristics and the circumstances and the additional consequences that have been brought upon" Maltbia, namely the loss of her medical license. (Doc. 207 at 1-3; Doc. 230 at 25, 58-59).

medical purpose *and* outside the usual course of professional practice; and (3) the district court erred by not giving the jury a subjective "good faith" jury instruction. (Doc. 244-3 at 1285).

On February 9, 2023, the Eleventh Circuit Court of Appeals affirmed Maltbia's convictions. (Doc. 228). The Eleventh Circuit concluded that "because 'good patient' evidence was not necessary to correct inaccuracies created by the government's evidence or 'complete the picture' of the charged crimes, . . . the district court's exclusion of 'good patient' evidence did not violate Maltbia's constitutional right to present a complete defense." (Id. at 9-10). The Eleventh Circuit further found that the district court did not commit plain error[6] by instructing the jury that a doctor unlawfully distributes a controlled substance by prescription "if (1) 'the prescription was not for a legitimate medical purpose' *or* (2) 'the prescription was not made in the usual

[6] The Eleventh Circuit reviewed Maltbia's challenges to the district court's jury instructions under the "plain error" standard because those claims of error were not preserved in the district court. (Doc. 228 at 11-18); see United States v. Malone, 51 F.4th 1311, 1328 (11th Cir. 2022) ("[T]he plain-error standard—which is much harder to satisfy than the de novo standard that applies when the defendant preserves error—governs when the defendant has not preserved his claim of error in the district court."); Puckett v. United States, 556 U.S. 129, 135 (2009) ("In federal criminal cases, Rule 51(b) tells parties how to preserve claims of error: 'by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.'").

course of professional practice.'" (Id. at 16-17 (emphasis in original) (citation omitted)).

With respect to Maltbia's third claim on appeal, the Eleventh Circuit noted that it "had repeatedly rejected defendants' requests for a good faith jury instruction—specifically, an instruction that a defendant's good faith could be a defense to an allegation that she acted outside the 'usual course of professional practice.'" (Id. at 12). Instead, the Eleventh Circuit had "held that the 'usual course of professional practice' prong must be evaluated using an objective standard, not a subjective one." (Id. at 12-13). However, after Maltbia's trial, the Supreme Court in the Ruan case had rejected the Eleventh Circuit's objective standard and clarified that "what matters is the defendant's subjective mens rea." (Id. at 13 (internal quotation marks and citation omitted)). In light of the Supreme Court's holding in Ruan, the Eleventh Circuit noted that Maltbia "could have potentially succeeded on the first two" prongs of the plain error test. (Id. at 14 n.7). The Eleventh Circuit stated: "Although we do not have any language for a good faith instruction to evaluate because none was proposed in this case, we do know that the jury instruction given was erroneous because it used an objective standard, rather than the subjective standard that is now required." (Id.). The Eleventh Circuit further stated that the error was plain because it was evident at the time of appellate

review. (Id.). However, the Eleventh Circuit found that Maltbia did not meet the third prong of the plain error test because she could not "satisfy her burden to prove that there is a reasonable probability that she would have obtained a different result but for the error." (Id. at 14). The Eleventh Circuit noted that "Maltbia ma[de] no argument and present[ed] no evidence that she was prejudiced by the error." (Id. at 15). And it "decline[d] to construct a prejudice argument for Maltbia from a blank slate." (Id.). Thus, the Eleventh Circuit "conclude[d] that Maltbia fail[ed] to meet her burden and [could not] survive plain error review when she provide[d] no showing of prejudice and ma[de] no attempt to argue that a different result would have occurred absent the error." (Id.).

With new counsel, Maltbia petitioned the United States Supreme Court for a writ of certiorari. (See Doc. 244-3 at 1385-1410). The Supreme Court denied Maltbia's petition for a writ of certiorari on June 12, 2023. (Id. at 1412).

On June 10, 2024, Maltbia filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, along with a brief in support and numerous pages of exhibits. (Docs. 244, 244-3). The Government filed a response in opposition to Maltbia's § 2255 motion on October 11, 2024. (Doc. 248). Maltbia filed a reply on November 12, 2024. (Doc. 249). Thus, Maltbia's § 2255 motion has been fully briefed and is ripe for resolution.

## II. DISCUSSION

In her § 2255 motion, Maltbia raises four separate claims of ineffective assistance of counsel. In ground one, Maltbia contends that her trial counsel were ineffective for failing to properly instruct her to exercise her constitutional right to testify on her own behalf. (Doc. 244 at 5). In ground two, Maltbia asserts that her trial counsel were ineffective for failing to request that the jury be instructed to use a subjective standard to determine whether her controlled substance prescriptions were made in the usual course of professional practice. (Id. at 6). In ground three, Maltbia claims that her appellate counsel was ineffective for failing to file a reply brief or request supplemental briefing to address the impact of the Supreme Court's decision in the Ruan case on Maltbia's case. (Id. at 8). In ground four, Maltbia maintains that her trial counsel were ineffective for failing to request a continuance of her trial before jury selection based on the fact that a petition for a writ of certiorari was pending before the United States Supreme Court in the Ruan case. (Id. at 9).

### A. Habeas Standard

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed.

> 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

**B. Ineffective Assistance of Counsel Standard**

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) counsel's poor showing prejudiced her defense because there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). The petitioner bears the burden of proving her claim of ineffective assistance of counsel, and she must meet her burden on both prongs to succeed. Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010). A court "need not address the performance prong if

the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The proper measure of attorney performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances. Hinton v. Alabama, 571 U.S. 263, 273 (2014) (per curiam). This judicial scrutiny is highly deferential, and courts adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under the second prong of Strickland, it is not enough for the petitioner to show that the alleged errors "had some conceivable effect on the outcome of the proceeding." Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation omitted). Rather, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The Eleventh Circuit has recognized that under the rules and presumptions set out in Strickland and its progeny, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

**C. The Ruan Cases**

As noted, Maltbia was convicted of multiple violations of 21 U.S.C. § 841(a)(1).

> The Controlled Substances Act ("CSA") makes it unlawful, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance," such as opioids. 21 U.S.C. § 841(a)(1) (emphasis added). In turn, the CSA expressly authorizes medical "practitioner[s]" to dispense Schedule II and Schedule III substances with a "prescription." Id. § 829(b). Practitioners who seek to dispense controlled substances must register with the Attorney General. Id. § 822(a)(2). The key statutory terms—"controlled substance," "dispense," "distribute," "practitioner," and "prescription"—are defined either by statute, see id. § 802(6), (10), (11), (21), or by regulation, see 21 C.F.R. § 1306.04(a) (2022).

United States v. Heaton, 59 F.4th 1226, 1239 (11th Cir. 2023) (footnote omitted).

"The CSA's regulations, promulgated by the Attorney General, specify that, '[a] prescription for a controlled substance to be

effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of [her] professional practice.'" Id. (quoting 21 C.F.R. § 1306.04(a)). "Under § 1306.04(a), a prescription for a controlled substance is *effective* if it is issued 'for a legitimate medical purpose by an individual practitioner acting in the usual course of [her] professional practice.'" Id. at 1240 (emphasis in original) (quoting 21 C.F.R. § 1306.04(a)). "Put simply, the regulation has two requirements for a prescription to be effective: (1) 'a legitimate medical purpose' . . . (2) by a practitioner 'acting in the usual course of [her] professional practice.'" Id. (quoting 21 C.F.R. § 1306.04(a)). "Conversely, a prescription for controlled substances is *unlawful* "if it is issued (1) without a legitimate medical purpose *or* (2) by the physician acting outside the usual course of professional practice." Id. (emphasis in original). "Thus, both requirements must be satisfied to make a prescription authorized." Id.

At the time of Maltbia's trial, Eleventh Circuit "precedent required the government to show that a defendant subjectively knew [she] was acting not for a legitimate medical purpose under § 841." United States v. Duldulao, 87 F.4th 1239, 1251 (11th Cir. 2023) (citing United States v. Tobin, 676 F.3d 1264, 1282 (11th Cir. 2012)). "But it did not require the same showing with respect to whether a doctor violated § 841 by prescribing a controlled

substance outside the usual course of professional practice." Id. Instead, Eleventh Circuit "cases explained that, when it came to whether a physician acted outside the usual course of professional practice, 'the appropriate focus is not on the subjective intent of the doctor' but rather on 'whether, from an objective standpoint, the controlled substances were dispensed in the usual course of professional practice.'" Id. (quoting Tobin, 676 F.3d at 1282).

In United States v. Ruan, 966 F.3d 1101 (11th Cir. 2020) ("Ruan I"), the Eleventh Circuit reaffirmed that the question of whether a defendant acted in the usual course of her professional practice had to be evaluated based on an objective standard, not a subjective one. 966 F.3d at 1166-67. The defendants then petitioned for a writ of certiorari, and the Supreme Court granted certiorari on November 5, 2021. See Ruan v. United States, 142 S. Ct. 457 (2021).

In Ruan v. United States, 597 U.S. 450 (2022) ("Ruan II"), the Supreme Court overruled the Eleventh Circuit's precedent addressing the scienter requirement under 21 U.S.C. § 841. 597 U.S. at 467-68. The Supreme Court held that § 841(a)'s scienter provision (requiring the defendant to act "knowingly or intentionally") applies to both prongs of the "except as authorized" exception. Id. at 467. "To establish criminal liability under § 841, it therefore is not enough for the

government to prove that a defendant acted outside the usual course of professional practice by violating an objective standard of care." Duldulao, 87 F.4th at 1251. "Rather, Ruan II requires the government to prove that 'the defendant knowingly or intentionally acted in an unauthorized manner'—that the defendant knew [she] was acting outside the usual course of professional practice or intended to." Id. (citing Ruan II, 597 U.S. at 467). "The Supreme Court criticized an objective standard, like the one [the Eleventh Circuit] had applied, as reducing the requirements for criminal culpability under § 841 'to negligence.'" Id. (citing Ruan II, 597 U.S. at 466).

In United States v. Ruan, 56 F.4th 1291 (11th Cir. 2023) (per curiam) ("Ruan III"), the Eleventh Circuit noted on remand from the Supreme Court that the district court had "followed then-binding Eleventh Circuit precedent and denied the defendants' request for a good-faith instruction reflecting their subjective intent." 56 F.4th at 1297. Instead, the district court gave the following instruction:

> A controlled substance is prescribed by a physician in the usual course of a professional practice and, therefore, lawfully, if the substance is prescribed by him in good faith as part of his medical treatment of a patient in accordance with the standard of medical practice generally recognized and accepted in the United States.

Id.

In light of the Supreme Court's holding in Ruan II, the Eleventh Circuit concluded that the district court's jury instruction "inadequately conveyed the mens rea to authorize conviction under § 841(a)." Id. at 1298. Specifically, the Eleventh Circuit found that "the district court did not adequately instruct the jury that the defendants must have 'knowingly or intentionally' prescribed outside the usual course of their professional practices." Id. The Eleventh Circuit noted that "without the limiting qualification that only *subjective* good faith was sufficient for conviction, the jury was authorized to convict under the sort of objective good faith or honest effort standard rejected by the Supreme Court." Id. (emphasis in original).

The Eleventh Circuit reviewed the instructional error under the harmless error standard but found that the error was not harmless because "under the erroneous instruction in this case the jury was authorized to convict the defendants for conduct that was lawful." Id. The Eleventh Circuit explained:

> For Dr. Ruan, both sides presented expert evidence about the appropriate standard of care. In his defense, Dr. Ruan introduced witnesses who testified to his practices and procedures at the clinic to guard against abuse. He also testified in his own defense about how he always centered the patient's medical needs. Dr. Couch also introduced both expert witnesses who testified to the standard of care and lay witnesses who testified to his activities at the clinic. Like Dr. Ruan, Dr. Couch testified that he believed his actions to be in accord with the applicable standard of care.

> The jury could have weighed all of this evidence and concluded that Dr. Ruan and Dr. Couch subjectively believed their conduct was in accord with the appropriate standard of care. But under the erroneous instruction that was given, the jury could convict the defendants if they found that a reasonable doctor would not have believed the conduct was in accord with the appropriate standard. In other words, a properly instructed jury may not have convicted the defendants had it known that Dr. Ruan's and Dr. Couch's subjective beliefs that they were acting properly was a defense to these charges.

Id. Therefore, the Eleventh Circuit vacated the defendants' substantive drug convictions under § 841(a). Id.

**D. Analysis**

**Ground One**

As her first ground for relief, Maltbia claims that her trial counsel were "constitutionally ineffective for failing to properly instruct [Maltbia] to exercise her right to testify under the Fifth Amendment of the U.S. Constitution."[7] (Doc. 244 at 5). Maltbia asserts that her "mental state was the central issue because the Government had to prove that she acted with the subjective intent to violate [21] U.S.C. § 841." (Doc. 244-3 at 18). Maltbia states that her attorneys never advised her "of the necessity to testify on her subjective mental state and . . . did not explain Ruan, which was then pending at the Supreme Court." (Id.). Maltbia argues:

[7] Although Knizley and Armstrong both represented Maltbia at trial, Maltbia appears to focus solely on Knizley's performance.

> Knizley failed to advise Dr. Maltbia on the *importance* of taking the stand to refute the mens rea requirement. Knizley knew that the good-faith defense issue in Ruan I was pending at the Supreme Court. And while this Court "ha[d] to follow the Eleventh Circuit's law" (then using the objective standard), it remained essential for Dr. Maltbia to testify to her belief that she rigidly adhered to the applicable standards of care. Had Dr. Maltbia testified about her *subjective* belief, the Government likely would have objected based on the then existing Eleventh Circuit precedent; that said, the error would have been preserved for appeal. Had Knizley informed Dr. Maltbia about the imperative to testify, based on Ruan, Dr. Maltbia would have testified. Had Dr. Maltbia testified, then Knizley would have been able to argue the Eleventh Circuit's standard jury instruction was erroneous and Knizley should have been able to reverse Dr. Maltbia's conviction. Yet counsel did not advise Dr. Maltbia on the imperative to testify based on a potentially favorable opinion in Ruan and Dr. Maltbia did not testify.

(Id. at 22-23 (emphasis in original) (footnotes omitted)). Maltbia contends that had she "been given proper advice on her right to testify and took the stand to tell the jury about her *subjective* belief in treating patients, 'there is at least a reasonable probability that, but for counsel's unprofessional conduct, the result in the case would have been different.'" (Id. at 28 (emphasis in original) (citation omitted)).

"[A] criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial." United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc) (emphasis in original). "Defense counsel bears the primary responsibility for advising the defendant of [her] right to testify or not to testify, the strategic implications of each choice, and that it is

ultimately for the defendant [herself] to decide." Id. at 1533. "[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." Id. "The defendant can then make the choice of whether to take the stand with the advice of competent counsel." Id. "In other words, the right to counsel guarantees a defendant the right to receive advice concerning [her] decision to testify, while the right to testify guarantees a defendant the personal right to choose whether to testify." United States v. Anderson, 1 F.4th 1244, 1254 (11th Cir. 2021).

In this case, there is no question that Maltbia's counsel prepared her extensively to testify prior to trial and advised her in detail about what counsel believed were the potential risks and benefits of her taking the stand. At trial, Maltbia confirmed under oath that she and her attorneys had discussed the decision about whether she would testify, that she understood she had the right to testify if she wished, and that her decision not to testify was her own. (Doc. 218 at 183). However, Maltbia contends that her counsel's advice was not sufficient to satisfy the Strickland standard because counsel failed to explain the benefits of her testifying in the event of a favorable outcome in Ruan.

Maltbia's claim fails as a matter of law because "[a]n attorney's failure to predict a Supreme Court ruling—even if a

claim based upon anticipation of that ruling was reasonably available when counsel failed to raise it—does not constitute ineffective assistance of counsel." Steiner v. United States, 2017 U.S. Dist. LEXIS 57517, at *10, 2017 WL 9472744, at *4 (M.D. Ala. Apr. 13, 2017), report and recommendation adopted, 2017 U.S. Dist. LEXIS 187576, 2017 WL 5465518 (M.D. Ala. Nov. 14, 2017), aff'd, 940 F.3d 1282 (11th Cir. 2019). The Eleventh Circuit has "a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring in denial of rehearing en banc) (citing cases); see, e.g., Ritchie v. United States, 112 F.4th 1344, 1347-48 (11th Cir. 2024) ("[W]e have repeatedly emphasized that an attorney's failure to anticipate a change in the law doesn't constitute ineffective assistance."); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'") (quoting Elledge v. Dugger, 923 F.2d 1439, 1443 (11th Cir.), modified in unrelated part, 833 F.2d 250 (11th Cir. 1987)); Pitts v. Cook, 923 F.2d 1568, 1573-74 (11th Cir. 1991) (concluding that although the Supreme Court had granted certiorari in Batson several weeks before the petitioner's trial, and a Batson-type claim was therefore

available to trial counsel, counsel's failure to raise such a claim was not ineffective assistance because "an ordinary, reasonable lawyer may fail to recognize or to raise an issue, even when the issue is available, yet still provide constitutionally effective assistance") (citations and internal quotation marks omitted); Sullivan v. Wainwright, 695 F.2d 1306, 1309 (11th Cir. 1983) ("Counsel's failure to divine [a] judicial development . . . does not constitute ineffective assistance of counsel."); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by Strickland, an attorney need not anticipate changes in the law."); Fla. Dep't of Corr. v. Fana, 593 F. App'x 954, 956 (11th Cir. 2014) (per curiam) ("[N]umerous decisions of this Court have construed Strickland as not requiring counsel to make arguments based on predictions of how the law may develop."). Indeed, "the rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change is such that the forfeited issue was, in hindsight, a sure fire winner." Ardley, 273 F.3d at 993 (citing cases).

In accordance with this precedent, the Eleventh Circuit has held in at least two unpublished cases that an attorney's failure to anticipate the Supreme Court's holding in Ruan II or to raise a Ruan-type claim prior to the Supreme Court's opinion in Ruan II does not amount to ineffective assistance. See Ignasiak v. United

States, 2024 U.S. App. LEXIS 19395, at *8, 2024 WL 4678061, at *3 (11th Cir. Aug. 2, 2024) (per curiam) ("Assuming that Ignasiak's § 2255 motion also raised a claim that his counsel was ineffective in failing to anticipate and raise a Ruan-based argument at the time of his guilty plea, he is not entitled to a COA on this issue. We have previously explained that '[a]n attorney's failure to anticipate a change in the law does not constitute ineffective assistance.'") (quoting Steiner v. United States, 940 F.3d 1282, 1293-94 (11th Cir. 2019)), cert. denied sub nom. Ignasiak v. United States, 145 S. Ct. 1330 (2025); Avery-Kelly v. United States, 2025 U.S. Dist. LEXIS 14700, at *2, 2025 WL 2057200, at *1 (11th Cir. June 13, 2025) (stating that counsel was not "ineffective for failing to anticipate Ruan's ultimate rejection of this Court's interpretation of 21 U.S.C. § 841") (citing Ritchie, 112 F.4th at 1347-48); see also Troup v. United States, 2024 U.S. Dist. LEXIS 166449, at *5-6, 2024 WL 4454723, at *2 (N.D. Ga. Aug. 14, 2024) ("Ruan was issued after Movant was convicted, and it is axiomatic that counsel cannot be ineffective for failing to anticipate changes in the law."), report and recommendation adopted, 2024 U.S. Dist. LEXIS 164898, 2024 WL 4182921 (N.D. Ga. Sept. 13, 2024); Sanchez v. United States, 2023 U.S. Dist. LEXIS 183770, at *24, 2023 WL 8418024, at *9 (M.D. Ala. Oct. 12, 2023) ("Petitioner's counsel was not ineffective for failing to advise of the legal principles expounded in Ruan or to make Ruan-based arguments to

the court. Counsel simply cannot be deemed ineffective for failing to anticipate the holding of what was then an undecided case."), report and recommendation adopted, 2023 U.S. Dist. LEXIS 214974, 2023 WL 8376200 (M.D. Ala. Dec. 4, 2023); Heromin v. United States, 2024 U.S. Dist. LEXIS 108729, at *6, 2024 WL 3090657, at *2 (M.D. Fla. June 20, 2024).

At the time of Maltbia's trial in August 2021, a petition for a writ of certiorari in the Ruan case was pending before the Supreme Court. However, the Supreme Court did not grant certiorari in the Ruan case until November 5, 2021, more than two months after the conclusion of Maltbia's trial, and it did not issue its opinion in Ruan II until June 27, 2022. As the Eleventh Circuit has made clear time and again, to provide reasonably effective representation, Maltbia's trial counsel were not required to anticipate the possibilities that the Supreme Court *might* grant certiorari in the Ruan case and *might* subsequently issue a decision overruling the Eleventh Circuit's application of an objective standard to the "outside the usual course of professional practice" requirement and adjust their trial strategy based on a prediction of what the Supreme Court might do. As the Supreme Court cautioned in Strickland, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." 466 U.S. at 689. The Eleventh Circuit has admonished that "omissions are inevitable" and "trial lawyers, in every case, could have done something more or something different." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). "But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Id. (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

Maltbia suggests that her case provides an exception to the well-established rule in this circuit that an attorney's failure to anticipate a change in the does not constitute ineffective assistance. (See Doc. 249). Maltbia points out that at the time of her trial, the Eleventh Circuit stood alone among the circuits in its interpretation of 21 U.S.C. § 841(a)(1). (Id. at 9). Maltbia further notes that Knizley had previously represented Dr. Ruan and raised a good-faith defense in his case and thus clearly understood the legal issue and was aware that the Eleventh Circuit's position was an "outlier." (Id.). Maltbia posits that "[t]he Eleventh Circuit's isolated position on 21 U.S.C. § 841(a)(1) and [Knizley's] role as Ruan's attorney distinguishes this case from Ritchie and cases like it." (Id. at 10).

However, it is telling - and ultimately fatal to Maltbia's claim - that Maltbia has not identified a single district or appellate court case from this circuit in which the court found

ineffective assistance based on an attorney's failure to take an action or make an argument in anticipation of a future court ruling or change in the law. "Put simply, it appears that the Eleventh Circuit does not recognize the distinction" that Maltbia attempts to raise. See Avery-Kelly v. United States, 2024 U.S. Dist. LEXIS 214663, at *5-6, 2024 WL 4892517, at *2 (N.D. Ga. Nov. 26, 2024) (stating that "Eleventh Circuit law squarely precludes a finding that trial/appellate counsel was ineffective for failing to raise a claim that was, at the time, foreclosed by circuit precedent[,]" and rejecting § 2255 petitioner's "attempts to distinguish some of the cases relied upon by the Magistrate Judge by pointing out that the issue in those cases was not in direct opposition to the majority of federal appellate courts"), certificate of appealability denied, 2025 U.S. Dist. LEXIS 14700, 2025 WL 2057200 (11th Cir. June 13, 2025).

Accordingly, even if counsel did not explain the potential benefits of Maltbia testifying in the event of a favorable outcome in Ruan, Maltbia cannot show that her trial counsel's performance fell below an objective standard of reasonableness because "[a]n attorney's failure to anticipate a change in the law does not constitute ineffective assistance." Steiner, 940 F.3d at 1293. Therefore, Maltbia is not entitled to relief as to ground one.[8]

---

[8] "Federal law provides that a district court shall hold a hearing on a § 2255 motion '[u]nless the motion and the files and records

**Ground Two**

As her second ground for relief, Maltbia claims that her trial counsel were "constitutionally ineffective for failing to request a jury instruction on subjective intent because the issue was before the Supreme Court." (Doc. 244 at 6). Maltbia states:

> During Dr. Maltbia's trial, Knizley did not ask for a subjective intent instruction. The instruction Knizley requested was "the date of signing of a prescription, is not, per se, outside the usual course of professional practice."
>
> The Government then raised "the interplay of good faith as well," and this Court acknowledged that "Dr. Ruan has proceedings before the Supreme Court because of the -- what is represented as a split in the circuits" and acknowledged that "the Eleventh Circuit has a very different approach than . . . most of the rest of the judiciary." Knizley asked "what [] the Court's inclination, if [the Court] c[ould] possibly share it with [them], in respect to [the good faith] charge." This Court rightly explained that it was "bound to follow the law of the Eleventh Circuit." The Government and

---

of the case conclusively show that the prisoner is entitled to no relief.'" Ritchie, 112 F.4th at 1349 n.2 (quoting 28 U.S.C. § 2255(b)). In this case, Maltbia requests an evidentiary hearing only with respect to her claim in ground one that her trial counsel failed to properly instruct her to testify in light of the pending petition for a writ of certiorari in the Ruan case. (See Doc. 244-3 at 47 ("Here, an evidentiary hearing is necessary to determine what Knizley advised Dr. Maltbia on her right to testify.")). However, the undersigned submits that an evidentiary hearing is not necessary because Maltbia's ineffective assistance claim in ground one conclusively fails as a matter of law. See Ritchie, 112 F.4th at 1349 n.2; Ardley, 273 F.3d at 993 ("Because our circuit law completely forecloses the contention that an attorney's failure to anticipate the Apprendi decision is ineffective assistance, district courts are not required to, and should not, hold an evidentiary hearing on that issue. There is no relevant evidence to hear. The issue is settled as a matter of law.").

this Court then discussed the good-faith defense, but Knizley remained silent.

This Court asked whether "there [was] any evidence one way or the other about Dr. Maltbia's subjective intent?" The Government explained it did not think there was evidence on Dr. Maltbia's subjective intent and therefore did not think she was entitled to the good-faith instruction. Knizley did not participate in the discission; to get Knizley involved this Court asked "Mr. Knizley, are we having an academic discussion?," and Knizley then stated "[o]bviously, there was no evidence presented in this case–in our side of the case" on Dr. Maltbia's subjective intent. This Court explained there had been no "evidence one way or the other . . . that would support a good-faith defense." Knizley reverted to comments on signing/dating prescriptions, and this Court reminded Knizley "that still is not the questions of a good-faith defense."

That said, [defense medical expert witness] Dr. Harrison testified specifically to Dr. Maltbia's subjective intent of her treatment of two patients.

This Court told Knizley because he suspected the Government would not put the good-faith defense as part of their proposed jury charge, "if [Knizley] want[ed] to argue for it, [he] will need to figure out how [he] want[s] to suggest it." Yet, during the charge conference, Knizley never argued that subjective intent should be included in the jury instructions even though Knizley knew the issue was before the Supreme Court.

After the jury convicted Dr. Maltbia, she appealed to the Eleventh Circuit. Knizley also represented Dr. Maltbia in the appeal. On appeal, Knizley argued that "[t]he Court erred by not giving the defendant a good-faith defense charge." In the brief, Knizley argued "[Dr.] Maltbia respectfully requested the reservation of the issue of the good-faith instructions in the event the United States Supreme Court rejects the Eleventh Circuit's objective standard and adopts a version of the subjective standards set forth by other jurisdictions." Even so, during trial, Knizley never asked for the subjective intent instruction to be included in the jury instructions, and therefore never objected when the district court explained that the jury was to use "an

> objective—not subjective—standard." Thus, the Eleventh Circuit reviewed the question of "[w]hether the district court erred by not giving the jury a good faith instruction" under plain error.

(Doc. 244-3 at 29-31). Maltbia maintains that Knizley's failure to request a subjective intent instruction was constitutionally deficient because the same issue was before the Supreme Court in the Ruan case. (Id. at 33). Maltbia asserts that "[h]ad Knizley properly raised and preserved the error, as he did for Dr. Ruan, then Knizley would have been able to argue in Dr. Maltbia's appeal that the trial court denied giving the jury a subjective intent instruction outside of plain error and likely secured a reversal." (Id. at 35).

Maltbia's second ground for relief fails for the same reason as her first. At the time of Maltbia's trial, Eleventh Circuit precedent provided "that, when it came to whether a physician acted outside the usual course of professional practice, 'the appropriate focus is not on the subjective intent of the doctor' but rather on 'whether, from an objective standpoint, the controlled substances were dispensed in the usual course of professional practice.'" Duldulao, 87 F.4th at 1251 (quoting Tobin, 676 F.3d at 1282). "Accordingly, good faith was irrelevant to the question of whether a doctor acted in the usual course of professional practice . . . ." Ruan III, 56 F.4th at 1296. At that time, the Supreme Court had not yet granted certiorari review

in Ruan, and it would not do so until more than two months after the completion of trial in Maltbia's case. See Ruan, 142 S. Ct. 457.

The Eleventh Circuit has "held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'" Spaziano, 36 F.3d at 1039 (quoting Elledge, 823 F.2d at 1443); see Funchess v. Wainwright, 772 F.2d 683, 691 (11th Cir. 1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel."); Jones v. United States, 224 F.3d 1251, 1257-58 (11th Cir. 2000) ("Since the district court would be required to follow the law of this circuit until it was overruled by the Supreme Court or an *en banc* panel of this court, it was not completely unreasonable for counsel to make a strategic decision to forego a claim that was a loser under the then-current state of the law."); Dell v. United States, 710 F.3d 1267, 1282 (11th Cir. 2013) ("[I]t generally does not fall below the objective standard of reasonableness for trial counsel to fail to raise a claim in anticipation that undeniably would lose under current law but might succeed based on the outcome of a forthcoming Supreme Court decision."); Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1334 (11th Cir. 2016). Thus, Maltbia's trial counsel did not

perform deficiently by failing to anticipate the Supreme Court's eventual rejection of the Eleventh Circuit's interpretation of § 841 and consequently failing to make an argument that was foreclosed by existing Eleventh Circuit precedent. See Avery-Kelly, 2025 U.S. App. LEXIS 14700, at *2, 2025 WL 2057200, at *1. Accordingly, Maltbia is not entitled to relief as to ground two.

**Ground Three**

As her third ground for relief, Maltbia claims that her appellate counsel, Knizley, "was constitutionally ineffective for failing to brief Ruan II while Dr. Maltbia's appeal was pending in the Eleventh Circuit." (Doc. 244 at 8). Maltbia states:

> On appeal, Knizley argued "[w]hether the trial court erred by failing to give a subjective good faith jury instruction."
>
> In his argument, Knizley cited Ruan I and wrote "this very issue is before the United States Supreme Court." Knizley stated the Eleventh Circuit's belief that the good-faith defense is an objective standard is an outlier and urged the Circuit to conform to a subjective standard. Knizley "respectfully requested the reservation of the issue of the good-faith instructions in the event the United States Supreme Court rejects the Eleventh Circuit's objective standard and adopts a version of the subjective standards set forth by other jurisdictions." Knizley wrongly stated that "there was no basis for [Dr.] Maltbia to specifically ask for a subjective standard good-faith instruction, as the Court clearly stated it was going to follow the existing Eleventh Circuit law."
>
> The Government filed its brief on July 1, 2022, four days *after* the Supreme Court (in Ruan II) held that the mens rea for a substantive drug conviction under § 841(a) is strictly a subjective standard. The Government's brief discussed Ruan II, but did not develop Ruan II's

holding that the Government must prove the doctor's subjective intent. While Ruan II overwhelmingly favored Dr. Maltbia, Knizley did not file a reply brief or a supplement under Rule 28(j).

Then, while Dr. Maltbia's appeal was still pending before the Eleventh Circuit, the Eleventh Circuit issued Ruan III. Ruan III vacated the doctor's convictions under § 841(a). *Still* Knizley did not file a supplement under Rule 28(j) and did not ask for supplemental briefing to address Ruan II or III. Around a month later, the Eleventh Circuit issued its opinion in Dr. Maltbia's appeal and denied her requested relief. The opinion addressed both Ruan II and Ruan III substantially. Dr. Maltbia filed a petition for writ of certiorari on May 9, 2023, which the Supreme Court denied on June 12, 2023.

Knizley should have filed a reply or supplement under Rule 28(j) and argued that, based on the holdings in Ruan II and III, the mens rea is a *subjective* standard for a drug conviction under § 841(a) and it was error to instruct Dr. Maltbia's jurors that "[w]hether a prescription was issued in the usual course of professional practice must be evaluated based on an *objective* standard [and] [t]hus, you must not focus on the subjective intent of the prescriber." Knizley's failure to file a reply brief making this argument was deficient under Strickland because Knizley ignored new Supreme Court and Eleventh Circuit precedent that strongly favored Dr. Maltbia.

. . . .

The Eleventh Circuit reviewed Dr. Maltbia's third issue (whether the trial court erred by failing to give a *subjective* intent instruction) for plain error, but the Eleventh Circuit concluded Dr. Maltbia could not meet her burden as she could not satisfy the third prong under plain error. Noting that "[e]ven if [Dr.] Maltbia could meet the first two prongs of the test, she cannot satisfy the third prong." Dr. Maltbia could not satisfy her burden to prove there is a reasonable probability she would have obtained a different result but for the error. Dr. Maltbia had the burden of persuasion, but Knizley made no argument and presented no evidence she was prejudiced by the error. The Eleventh Circuit noted:

> Even though Maltbia fails on the third prong of the plain error test, we note that she could have potentially succeeded on the first two. Although we do not have any language for a good faith instruction to evaluate because none was proposed in this case, we do know that the jury instruction given was erroneous because it used an objective standard rather than the subjective standard that is now required. See Ruan II, 142 S. Ct. at 2376.

> . . . .

> Under the plain-error doctrine, the error must be clear or obvious,—that is, if the explicit language of a statute or rule or precedent from the Supreme Court or the Eleventh Circuit directly resolves the issue and must "affect the defendant's substantial rights, provided it also seriously affects the fairness, integrity, or public reputation of judicial proceedings." The party challenging the error bears the burden of providing she had a reasonable probability of a different result absent the error. The court emphasized that "[Dr.] Maltbia ma[de] no argument and present[ed] no evidence that she was prejudiced by the error" and there was a reasonable probability of a different result absent the error. And, the Eleventh Circuit "*declined to construct a prejudice argument for [Dr.] Maltbia from a blank slate*." Accordingly, the panel concluded that "[Dr.] Maltbia fail[ed] to meet her burden and *c[ould not] survive plain error review when she provide[d] no showing of prejudice and ma[de] no attempt to argue that a different result would have occurred absent the error*." Therefore, if Knizley made an argument relying on Ruan II that Dr. Maltbia's conviction based on an *objective* standard was inappropriate but rather it must be a *subjective* standard, there is a reasonable probability that but for Knizley's unprofessional error the result of Dr. Maltbia's appeal would have been different.

> Knizley was therefore constitutionally ineffective for failing to file a reply or supplemental briefing after Ruan II.

(Doc. 244-3 at 39-44 (emphasis in original)).

In response, the Government argues:

> Maltbia claims that Knizley should have taken additional steps to raise the Supreme Court's decision in Ruan and the Eleventh Circuit's subsequent decision on remand as well. Her argument fails, however, because she has not identified specific arguments that Knizley should have made under those authorities. In essence, Maltbia seems to suggest that she could have demonstrated prejudice because the Eleventh Circuit ultimately found that the instructional error in the distribution instructions in Ruan was not harmless. Ruan addressed a preserved error (not an unpreserved one) and analyzed a different factual record. Maltbia's lack of specifics defeats her claim of deficient performance.
>
> For similar reasons, Maltbia has not shown prejudice, either. The standard of prejudice at this stage is at least as stringent as the prejudice standard on plain error. Maltbia's trial focused on falsifications of medical records and her dishonest statements to a DEA agent. That evidence differed from the evidence that the Eleventh Circuit addressed in Ruan. Most crucially, Ruan applied the constitutional standard for harmlessness. Conversely, Maltbia failed to object and had to demonstrate prejudice herself. At bottom, Maltbia's § 2255 motion lacks merit for the same reason that the Eleventh Circuit rejected her appeal; she did not carry her burden to establish that the jury would have reached a different decision if the Court had given a different instruction.

(Doc. 248 at 26-27 (internal citations omitted)).

Though a petitioner need not conclusively prove her claims within a § 2255 motion, she must allege "reasonably specific, non-conclusory facts that, if true, would entitle [her] to relief." Aron v. United States, 291 F.3d 708, 715 n.6 (11th Cir. 2002). "[V]ague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim." Canga v. United States, 2008 U.S. Dist. LEXIS 31165, at *15, 2008 WL

1766912, at *6 (M.D. Fla. Apr. 15, 2008) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)). The Court agrees with the Government that Maltbia has not alleged reasonably specific, non-conclusory facts that would entitle her to relief as to ground three.

Because Maltbia's claim of instructional error was unpreserved, the Eleventh Circuit reviewed it for plain error. (Doc. 228 at 11-15). To prevail under plain error review, Maltbia had the burden to show "that the district court made an error, that the error was plain, and that it affected [her] substantial rights." United States v. Iriele, 977 F.3d 1155, 1177 (11th Cir. 2020). If she carried that burden, the Eleventh Circuit had "discretion to reverse — but only if the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id.

"In many cases, [the Eleventh Circuit has] shortened the 'affected substantial rights' inquiry to whether the defendant carried [her] burden to show prejudice." United States v. Monroe, 353 F.3d 1346, 1354 n.10 (11th Cir. 2003). "[U]nlike harmless error—where the government carries the burden—the onus of establishing prejudice under plain error rests with the defendant." United States v. Margarita Garcia, 906 F.3d 1255, 1267 (11th Cir. 2018). "That burden is 'heavy'—and, in particular, 'the burden of showing prejudice to meet the third-prong

requirement is anything but easy.'" United States v. Edwards, 142 F.4th 1270, 1281 (11th Cir. 2025) (quoting Margarita Garcia, 906 F.3d at 1267). "To demonstrate prejudice, a defendant must 'show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" Id. (quoting United States v. Corbett, 921 F.3d 1032, 1037 (11th Cir. 2019)); see also Iriele, 977 F.3d at 1179 ("To show that an instructional error affected [her] substantial rights, a defendant must show that the error 'was probably responsible for an incorrect verdict.'") (quoting United States v. Whyte, 928 F.3d 1317, 1332 (11th Cir. 2019)).

Although Maltbia correctly notes that Knizley failed to construct an argument demonstrating that she was prejudiced by the erroneous jury instruction, she fails to identify what arguments she believes Knizley could or should have made to show that the jury instruction was probably responsible for an incorrect verdict. In her reply brief, Maltbia quotes at length from Ruan III, but she fails to explain how the Eleventh Circuit's analysis in that case is applicable to her claim. Notably, Ruan III involved a harmless error inquiry, whereas the offending jury instruction in Maltbia's case was reviewed for plain error. Furthermore, Ruan III involved a significantly different factual record in which both defendants testified that they believed their actions to be in accord with the applicable standard of care and

introduced expert and lay witnesses who testified about the practices and procedures at their clinic. See Ruan III, 56 F.4th at 1298.

At Maltbia's trial, evidence was presented that she regularly prescribed very high doses of controlled substances;[9] she prescribed opioids without properly assessing patients;[10] she repeatedly pre-signed prescriptions for controlled substances that her staff (who were her family members rather than licensed medical professionals) later provided to patients while she was out of the country and then falsely told law enforcement that "the entire place shut[] down" when she was not in the office;[11] she charged her patients $300 per visit even when they did not see the doctor;[12] she was mainly paid by cash or card and did not accept insurance even though most of her patients had some form of medical

[9] "Testimony at trial explained that oxycodone 30 refers to the dosage of oxycodone (30 milligrams) and that oxycodone 30 has the "highest street value" for oxycodone. (Doc. 228 at 3 n.2). "A DEA intelligence analyst testified that 58.7% of Maltbia's patients received at least one prescription of oxycodone 30." (Id. at 3-4). Maltbia's own medical expert acknowledged that Maltbia "was more generous with the amount of pain medication" than he would be and stated that he did not have "a single person" in his practice on oxycodone 30 despite treating a lot of pain. (Doc. 218 at 158, 175). He elaborated: "I mean, I have patients that are on Hospice. And I don't -- I don't have anybody on near this many milligram morphine equivalent." (Id. at 159-60).

[10] (See, e.g., Doc. 218 at 27-31, 33-38).

[11] (See, e.g., Doc. 215 at 162; Doc. 217 at 105-78).

[12] (See, e.g., Doc. 215 at 158; Doc. 217 at 16-20; Doc. 218 at 153).

insurance;[13] she falsified medical records and frequently signed medical notes indicating that she had seen patients during office visits for which she could not have been present;[14] and she implemented policies that could be construed to be intended to avoid detection by law enforcement.[15]

In the face of this evidence, Maltbia fails to explain what arguments Knizley could have made to demonstrate that the result of her trial probably would have been different had the jury been instructed to evaluate the "usual course of professional practice" prong using a subjective standard rather than an objective one. Thus, Maltbia has not shown a reasonable probability that the outcome of her appeal would have been different but for Knizley's failure to file a reply brief or request supplemental briefing to address Ruan II and III. Given her failure to demonstrate that she was prejudiced by her appellate counsel's omissions, Maltbia is entitled to no relief as to ground three.

**Ground Four**

As her fourth and final ground for relief, Maltbia claims that her trial counsel were constitutionally ineffective for failing to request a continuance before jury selection began on

---

[13] (See, e.g., Doc. 215 at 158, 226).

[14] (See, e.g., Doc. 216 at 124-163; Doc. 218 at 27-31, 36-43

[15] (See, e.g., Doc. 216 at 44-45, 48; Doc. 217 at 93-94).).

the grounds that a petition for a writ of certiorari was pending before the Supreme Court in the Ruan case. (Doc. 244 at 9).

This claim is meritless. The Supreme Court did not grant certiorari in the Ruan case until more than two months after the conclusion Maltbia's trial, and it did not issue the ruling on the merits in Ruan II until nearly a year after Maltbia's trial. Clearly, Knizley and Armstrong were not ineffective for failing to move to continue Maltbia's case indefinitely based on the possibilities that the Supreme Court might grant certiorari in the Ruan case and then might issue a decision in that case which was helpful to Maltbia. See Steiner, 940 F.3d at 1293 ("An attorney's failure to anticipate a change in the law does not constitute ineffective assistance"); see also Bagley v. United States, 2019 U.S. Dist. LEXIS 31040, at *25, 2019 WL 948820, at *9 (W.D. Pa. Feb. 27, 2019) ("It would be unrealistic for Attorney Moser to seek to continue Bagley's entire case based upon a possibility that the Supreme Court *might* decide to hear a specific case and then *might* rule in a way that was beneficial to his client. A criminal defense attorney is not ineffective in failing to seek a continuance simply because there is a pending petition for writ of certiorari in a case raising similar legal issues.") (emphasis in original). Indeed, Maltbia has offered no facts to suggest that a such a motion would have stood a reasonable chance of being granted by the district court. Therefore, Maltbia's counsel did

not perform deficiently by failing to seek a continuance of her trial pending a resolution of Ruan in the Supreme Court. As a result, Maltbia is entitled to no relief with respect to ground four.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED.** See Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural

ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the undersigned concludes that reasonable jurists would not find the Court's disposition of Maltbia's claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Maltbia is not entitled to a certificate of appealability and should not be permitted to proceed *in forma pauperis* on appeal.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Petitioner Chykeetra Maltbia's motion under 28 U.S.C. § 2255 to vacate, set

aside, or correct sentence (Doc. 244) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Maltbia. It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **5th** day of **October, 2026.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**